UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED FOOD AND COMMERCIAL WORKERS INTERNATIONAL UNION-INDUSTRY PENSION FUND, et al., | ) ) ) | |
| | ) | Civil Action No. |
| Plaintiffs, | ) | 1:07-cv-06782 |
| | ) | |
| v. | ) | Judge Castillo |
| | ) | |
| GEPPERTH'S MEAT MARKET, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## DECLARATION OF MARK W. MEAD

I, Mark W. Mead, pursuant to 28 U.S.C. § 1746, declare:

1.      I am over the age of 21 and am the Administrator of the United Food and Commercial Workers International Union-Industry Pension Fund (the "Fund").

2.      As administrator of the Fund, I am responsible for overseeing the administration of the Fund. My duties include, but are not limited to, the following: (1) the supervision of Fund staff responsible for processing and maintaining records of remittance reports and contributions and the collection of contributions; (2) the proper crediting of contributions received; (3) the monitoring of any delinquencies pursuant to the Fund's Delinquency Collection Procedure and, when necessary, appropriate referral to counsel for collection; (4) the execution of the rules and regulations of the Fund and administration of the Fund in conformity with the decisions of the Board of Trustees of the Fund; (5) the keeping of minutes of the Fund; and (6) the payment of benefits.

3.     I am personally familiar with the Trustees' policy with respect to the collection of delinquent contributions. That policy, as set forth in Article VIII of the Fund's Agreement and Declaration of Trust ("Trust Agreement") and in the Delinquency Collection Procedure, requires employers to submit reports and contributions by the 20th of the month following the month in which the work was performed for which contributions are due. Employers who fail to remit payments in a timely manner may be liable for interest, liquidated damages of 20% of the delinquent amount, attorneys' fees and costs of collection.

4.     Defendant, Gepperth's Meat Market, Inc., is signatory to a collective bargaining agreement ("CBA") pursuant to which the Defendant is obligated to contribute for each employee covered under the CBA. A copy of the relevant pages of the CBA and Employer Participation Agreement is attached hereto as Exhibit A.

5.     At the request of Fund Counsel, I have reviewed the Fund's records with respect to the Defendant.

6.     When the Plaintiffs filed their Complaint, the Defendant had failed to remit contributions due to the Fund for Defendant's employees covered under the Defendant's CBA and the Fund's governing documents for the period of August 2007 through October 2007, but has since paid and has become delinquent in contributions for the month of December 2007. A chart identifying the contributions owed by Defendant for said months and the accrued interest thereon, is attached hereto as Exhibit B.

2

7.    Defendant is liable under the Fund's delinquency collection policy and the Employee Retirement Income Security Act of 1974, as amended, for delinquent contributions to the Fund for the month of December 2007 in the minimum amount of $76.98; interest assessments in the amount of $46.06 for late contributions for the months of June 2007 through October 2007; and liquidated damages on the delinquent contributions in the amount of $15.40.

I declare under penalty of perjury that the foregoing is true and correct. Executed on this 23rd day of January 2008, at Chicago, Illinois.

Mark W. Mead, Administrator
United Food and Commercial Workers
International Union-Industry Pension Fund

84845

3

# Exhibit A

**RECEIVED**

SEP 2 4 1998

**N. P. F.**

## EMPLOYER PARTICIPATION AGREEMENT
### FOR THE
## UNITED FOOD AND COMMERCIAL WORKERS
### INTERNATIONAL UNION-INDUSTRY PENSION FUND

THIS AGREEMENT, effective as of the _1st_ day of _Oct_ . _____, 19_98_ (the "Effective Date"), by and between the undersigned employer (the "Company"), and the United Food and Commercial Workers International Union-Industry Pension Fund (the "Plan"). .

## W I T N E S S E T H:

WHEREAS, pursuant to a collective bargaining agreement with Local Union _546_, United Food and Commercial Workers International Union, AFL-CIO (the "Local Union"), the Company has agreed to make contributions to the United Food and Commercial Workers International Union-Industry Pension Fund for work performed on and after the Effective Date by its employees covered by said collective bargaining agreement; and

WHEREAS, the Plan is willing to accept the Company as an Employer under the Plan upon the terms and conditions herein set forth;

NOW, THEREFORE, for and in consideration of the premises and of the mutual covenants herein contained, the Company and the Plan hereby agree as follows:

1.      By execution of this Participation Agreement, the Company adopts and agrees to be bound by all of the terms and provisions of the Agreement and Declaration of Trust of the United Food and Commercial Workers International Union-Industry Pension Fund (the "Trust Agreement"), as amended and restated effective June 8, 1979 and such subsequent amendments which are adopted pursuant to Article X of the Trust Agreement. The Company agrees to be bound by all actions taken by the Trustees of the Plan pursuant to the powers granted them by the Trust Agreement.

2.      By execution of this Participation Agreement by one Employer Trustee and one Union Trustee, the Trustees accept the Company for participation in the Plan. The Trust Agreement and the Pension Plan adopted by the Trustees, as in effect from time to time, shall fully apply to the Company and its employees accepted for participation in the Plan.

3. This Participation Agreement does not authorize the Trustees to bind the Company in any manner inconsistent with the terms of its collective bargaining agreement and the Trust Agreement. This provision shall not preclude the Trustees from enforcing any rights which are provided as a matter of law in favor of the Plan, its participants and beneficiaries, or the Trustees.

4. Only those categories of employment for which the present collective bargaining agreement between the Company and the Local Union now requires contributions to the Plan shall be covered hereunder. Any other categories of employment shall require specific acceptance by the Trustees to be covered under the Plan.

5. This Agreement shall remain in effect during the term of any collective bargaining agreement between the Company and the Local Union, during any extensions or renewals thereof and during any period the Company continues to make contributions provided that if any negotiated change in the collective bargaining agreement requiring contributions to the Plan is made, such change must be submitted to the Trustees for acceptance prior to its becoming effective and binding on the Trustees. The Trustees, however, reserve the right to terminate the Company's participation in the Plan:

    (a) on account of the Company's failure to make contributions to the Plan;

    (b) if at any time the Company's collective bargaining agreement is modified in a manner which affects the operation or administration of the Plan in a manner which is unacceptable to the Trustees; or

    (c) as otherwise provided in the Trust Agreement.

6. The commencement and continuance of the Company's participation in the Plan is contingent upon such commencement or continuance of participation not impairing the qualification of the Plan under sections 401 and 501 of the Internal Revenue Code of 1954 and successor statutes.

7. The Company shall pay to the Plan the amounts required by its collective bargaining agreement with the Local Union, from time to time in effect, for each employee in a category which has been accepted for participation by the Trustees and for whom a contribution is required pursuant to its collective bargaining agreement with the Local Union. All contributions shall be due and payable at the Plan Office or at any other location which the Trustees may, from time to time, designate in accordance with the collection procedures established by

the Trustees. The Company understands that failure to make payments in a timely manner pursuant to such rules may result in its being required to pay liquidated damages, interest and costs of collection, including reasonable attorney's fees, as well as its participation in the Plan being terminated, all as provided in rules established from time to time by the Trustees of the Plan.

8. The Company does hereby represent that it is not under common control or affiliated by stock ownership or otherwise with any other company participating in the Plan, except for the following:

_____

_____

_____

The Company does further agree that it shall give the Plan notice if at any time in the future it becomes affiliated or under common control with another company participating in the Plan.

IN WITNESS WHEREOF, the Company has caused this Agreement to be executed on its behalf by a duly authorized officer, and a duly authorized Employer Trustee and Union Trustee have executed this Agreement on behalf of the Plan.

_Gepperth's Meat Mkt_ ("Company")

_9/12_____, 19_98_    BY _____

UNITED FOOD AND COMMERCIAL
WORKERS INTERNATIONAL
UNION-INDUSTRY PENSION FUND

_1/7_____, 19_99_    BY _____
Employer Trustee

_1/7_____, 19_99_    BY _____
Union Trustee

Approved: _Sept 14_, 19_98_
_____
Local Union No. _546_ United
Food and Commercial Workers
International Union, AFL-CIO

84180EH:JMS 04/20/94                    3


RECEIVED

FEB 2 1 2007

N.P.F.

**INDEPENDENT**
**RETAIL MEAT CUTTERS**
**CONTRACT**



LOCAL 1546 UNITED FOOD &
COMMERCIAL WORKERS INTERNATIONAL UNION    #01871

Term:  September 8, 2006 to September 7, 2009

ARTICLES OF AGREEMENT governing Retail Meat Markets in Groups I, II, and III, entered into between

**GEPPERTH'S MARKET**

as bargaining agent for all authorizing Employers, hereinafter called the "Employer" and

**LOCAL 1546, UNITED FOOD & COMMERCIAL WORKERS**
**INTERNATIONAL UNION**

hereinafter sometimes referred to as the "Union," acting as the exclusive collective bargaining agent for all employees covered by this Agreement.

**ARTICLE I**
**GENERAL**

## Section 1.1 - Scope of Contract

It is agreed that this Contract shall govern the hours, wages and other conditions of employment of Employer's meat department employees in Retail Meat Markets, within the geographical jurisdiction of Local 1546.

## Section 1.2 - Definitions

(a)    <u>Apprentices</u>.  Apprentices may be full-time or part-time but a maximum one part-time Apprentice per store.  An Apprentice is an employee who is in training to become a Journeyman Meat Cutter.  Apprentices must be at least eighteen (18) years of age.  The Employer agrees to rotate all Apprentices in his markets so as to give them sufficient, well rounded experience to qualify them as Journeymen at the end of the 84-month apprenticeship period.

A part-time Apprentice shall work a minimum of four (4) hours per scheduled day and sixteen (16) hours per week.  Any part-time new entry Apprentice who works 40 hours a week for twelve (12) consecutive weeks would be considered full time.  No restrictions on starting time will apply.

An Apprentice promoted to Head Meat Cutter shall be paid the current Head Meat Cutter rate of pay.

## Section 7.10 - Payroll Audits

The Employer agrees to make available to the Trustees or their designee during normal business hours, all payroll records and other employment records necessary to ascertain that their contributions required under this Agreement have been paid correctly and in full.

## Section 7.11 - Trustees' Limitations

Nothing in this Agreement shall authorize the Board of Trustees to increase the amount of contributions required to be paid by the Employers pursuant to this Agreement, to extend the period for which the contributions shall be made or to authorize the Board of Trustees to bind the Employer in any manner inconsistent with the terms of this Agreement or the Trust Agreement.

## Section 7.12 - Termination of Participation

If for any reason, the Employer's participation in the Health and Welfare Fund fails to commence or, having commenced, is terminated, then the Employer shall pay the contributions herein required to a qualified health and welfare plan upon which the Employer and the Union shall agree, or, in the event the agreement is not reached, the disposition of such payment shall be determined in accordance with the grievance procedures contained in this Agreement.

## ARTICLE VIII
## PENSION

## Section 8.1 - Pension Fund

By agreement with Employers, the International Union with which this Local Union is affiliated has established a Pension Fund designated as the United Food and Commercial Workers International Union-Industry Pension Fund (the "Pension Fund").

## Section 8.2 - Employer's Contributions and Definitions of Eligible Employee

As used in this Article, an "Eligible Employee" is an employee:

(1)     Who is covered by this Contract;

(2)     Who has completed a "Qualification Period" as defined below;

(3)     Who has worked one-hundred (100) or more hours in a calendar month following the completion of their qualification period.

"Qualification Period" means a calendar month in which an employee has worked one-hundred twenty-eight (128) or more hours for his/her Employer. Hours worked during an employee's probationary period shall be counted toward completion of his/her Qualification Period. An Employee becomes eligible the first of the month following completion of 90 days of continuous service during which the employee worked a minimum of one hundred and twenty-eight (128) hours per month during each month of employment. Once qualified, the full-time contribution rate shall continue to be paid for each succeeding calendar month during which the employee works a minimum of one-hundred (100) hours.

An employee's hours must be reduced below 100 hours per month for three (3) consecutive months before an Employer is no longer required to pay Full-Time Pension contributions on such employee.

When an Eligible Employee's seniority has been terminated under this Agreement, that employee shall no longer be an eligible employee until he/she shall have completed another Qualification Period. If an employee has not lost seniority, only one hundred (100) hours are required.

Effective September 8, 2006, for each employee who is covered by this Agreement, who has completed their probationary period and who is an "Eligible Employee", the Employer shall pay to the Pension Fund the sum of $185.65 per month during each calendar month provided the "Eligible Employee" maintains their eligibility as defined herein.

Effective September 8, 2006, the Employer shall contribute $27.30 per month on behalf of "eligible part-time employees" to the United Food & Commercial Workers International Union-Industry Pension Fund. "Eligible part-time employee" shall be defined on the same basis as currently provided for part-time coverage in the Health & Welfare Fund.

The Employer shall contribute on behalf of said "Eligible Employees" on or before the tenth (10th) day of the month following the month in which the work determining the contribution was performed.

## Section 8.3 - Commencement of Contributions

The commencement of contributions to the Pension Fund is contingent upon acceptance of the employees covered hereunder in the Pension Fund. The Employer shall make contributions as provided in this Agreement upon receiving written notice of the Trustees' acceptance. Thereafter, this Agreement shall remain in effect during the terms set forth in Article XIII hereof and any extensions, renewals or modifications thereof and the terms hereof shall not be amended without the express written consent of the Trustees of the Pension Fund, the Local Union, and the Employer, provided, however, that nothing herein contained shall limit the right of the Trustees to terminate participation of the employees covered hereunder in the Pension Fund on account of the Employer's failure to make contributions or as otherwise provided in the Trust Agreement or Pension Plan, and, further provided, that nothing herein contained shall limit the right of the Employer and the Local Union to terminate participation in the Pension Fund, subject to the terms of the then existing Trust Agreement and Pension Plan.

## Section 8.4 - Termination of Contributions

Contributions to the Pension Fund shall be discontinued as of the first of the month following:

    (a)    Termination of employment.

    (b)    A lay-off or leave of absence of thirty (30) calendar days or more.

    (c)    The employee's ceasing to be an Eligible Employee, as set forth above.

### Section 8.5 - Total Hours Worked

For the purpose of determining the obligation to contribute to the Pension Fund, paid holidays, vacations and other absences for which wages are paid shall be considered to be time worked.

### Section 8.6 - Employer's Rights

The obligation to pay contributions to the Pension Fund shall in no way affect any rights to discharge an employee granted the Employer under this Agreement.

### Section 8.7 - Benefit Level

Employer contributions to the Pension Fund shall be used to provide the retirement benefits for eligible employees in accordance with the Pension Plan adopted from time to time by the Trustees of said Pension Fund (the "Trustees").

### Section 8.8 - Trustees' Remedies

The Employer's obligation hereunder to contribute to the Pension Fund shall not be subject to any implied bargaining agreement.

In addition to any other remedy which may otherwise be available to them, the Trustees of the Pension Fund shall have the right to sue in any court of competent jurisdiction to secure the payment of any monies due hereunder without the necessity of first utilizing any other remedy provided, however, that if the Employer's obligation to contribute is contingent upon the resolution of an existing dispute between the Employer, Union or employee, which is the subject of a grievance or arbitration pursuant to Article XI hereof, the right of the Trustees to sue shall be stayed until the grievance and/or arbitration procedure is exhausted, but not more than 190 days after the Trustees' initial demand for the Employer's contribution. The Trustees shall be bound by the final disposition of the grievance or the findings of the arbitrator in determining the Employer's obligation to contribute hereunder.

### Section 8.9 - Trust Agreement

The Employer adopts and agrees to be bound by all of the terms and provisions of the United Food and Commercial Workers International Union-Industry Pension Fund Agreement and Declaration of Trust, as amended from time to time, (the "Trust Agreement") as fully as if the Employer was an original party thereto, a copy of which Trust Agreement the Employer has received. The Employer hereby designates as its representatives on the Board of Trustees of the Fund, the Employer Trustees named in said Trust Agreement, together with their successors selected in the manner provided therein. The Employer agrees to be bound by all actions taken by said Trustees pursuant to the powers granted them by the Trust Agreement.

### Section 8.10 - Trustees' Limitations

Nothing in this Agreement shall authorize the Board of Trustees to increase the amount of contributions required to be paid by the Employer pursuant to this Agreement to extend the

period for which the contributions shall be made or to authorize the Board of Trustees to bind the Employer in any manner inconsistent with the terms of this Agreement or the Trust Agreement.

### Section 8.11 - Compliance with Law

The Agreement and Declaration of Trust herein provided for shall comply in all respects with the applicable provisions of the Labor Management Relations Act of 1947 as amended and also with Section 7 (E) (4) of the Fair Labor Standards Act as amended so that with respect to the latter, the contributions herein provided for shall qualify as exclusions from the regular rate of pay. Said trust shall also comply with all applicable provisions of the Internal Revenue Code of 1954 as amended and the regulations issued thereunder, so that the trust shall constitute a qualified trust under the provisions of Section 401(a), the Employer's contributions to the Pension Fund shall be deductible under Section 404(a), and the Pension Fund shall be exempt from taxation under Section 501 (a) of the Internal Revenue Code.

### Section 8.12 - Employer's Pension Plan

Unless the Employer and the Union have agreed otherwise, any pension, retirement or profit sharing plan which the Employer has heretofore established for the purpose of providing pension and retirement benefits to employees covered by this Contract shall terminate automatically with respect to such employees effective on September 30, 1965, except for liabilities accrued up to the effective date of such termination.

### Section 8.13 - Trustees Acceptance

The Trustees' acceptance for participation in the Pension Fund of the employees covered hereunder shall be limited only to categories of employment covered hereunder at the time of application for such acceptance occurs and the admission of any other category of employment to participation in the Pension Fund shall require specific acceptance by the Trustees.

## ARTICLE IX
## UNION MANAGEMENT RELATIONS

### Section 9.1 - Union Employees

The Union, if requested, will furnish persons, insofar as they are available, who will work to the best interest of the Employer in every way, just and lawful, who will give honest and diligent service to patrons of the Employer's establishment, and who will do everything within their power for the uplifting of the meat industry.

### Section 9.2 - Union Shop

It shall be a condition of employment that all employees of the Employer covered by this Agreement who are members of the Union in good standing on the date on which this Agreement is signed shall remain members in good standing, and those who are not members on the date which this Agreement is signed shall, on the thirty-first (31st) day following the date on which this Agreement is signed, become and remain members in good standing in the Union. It shall also be a condition of employment that all employees covered by this Agreement and hired on or

## ARTICLE XIII
## TERM

### Section 13.1 - Initial Term

This Agreement shall become effective at 12:01 AM September 8, 2006, and shall expire at 12:00 midnight September 7, 2009.

### Section 13.2 - Renewal Term

If either party wishes to modify this Agreement at its expiration, it shall serve notice in writing of such request upon the other party not less than sixty (60) days prior to the expiration date. In the absence of the service of such notice, this Contract shall automatically renew itself for a period of one year and from year to year thereafter.

### Section 13.3 - Retroactivity

This Contract shall remain in full force and effect until a new agreement is negotiated, but not beyond an additional sixty (60) days beyond the Contract expiration date. Any increases in wages set out in Article III resulting from the negotiations following the Contract expiration date shall be retroactive to the date of expiration, but not exceeding ninety (90) calendar days, whichever period shall be shorter. There shall be no retroactivity with respect to other contract changes, such as changes in working hours or premium or overtime pay.

Executed this _2nd_ day of _FeB_ , 200_6_.

GEPPERTH'S MARKET

UNITED FOOD & COMMERCIAL
WORKERS INTERNATIONAL UNION,
LOCAL 1546

_____
Signature

_____
Kenneth R. Boyd, President
International Vice President

_OTTO DEHKE / PRESIDENT_
Print Name/Title

Contract #IP035468

- 29 -

# Exhibit B

**GEPPERTH'S MEAT MARKET, INC.**
ER# 01871 / LOCAL 1546C

Prepared: 1/11/08
By: Zenith Adm.

| PERIOD | # OF EE'S | MONTHLY RATE | AMOUNT DUE | AMOUNT PAID | DIFFERENCE DUE | ESTIMATED INTEREST | TOTAL AMOUNT DUE |
|---|---|---|---|---|---|---|---|
| DEC   2007 | 3 | 185.65 | $   556.95 | $   (479.97) | $   76.98 | $   - | $   76.98 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Sub-total: | | | | | $   76.98 | $   - | $   76.98 |
| June 2007 late fee charge | | | | | | | $   11.76 |
| July 2007 late fee charge | | | | | | | $   7.09 |
| August 2007 late fee charge | | | | | | | $   13.45 |
| September 2007 late fee charge | | | | | | | $   8.76 |
| October 2007 late fee charge | | | | | | | $   5.00 |
| **GRAND TOTAL DUE:** | | | | | | | $   123.04 |